**FUJITSU LIMITED, Plaintiff,**

v.

**SPRAGUE ELECTRIC CO., Defendant,**

**and**

**Sony Corporation of America, Additional Defendant on Counterclaim.**

**No. 65 Civ. 3248.**

United States District Court
S. D. New York.
March 7, 1967.

**932**

Robert E. Burns, New York City, for plaintiff.

Burgess, Ryan & Hicks, New York City, for defendant; Arthur G. Connolly, Jr., and Rudolf E. Hutz, Connolly, Bove & Lodge, Wilmington, Del., of counsel.

Burns, Lobato & Zelnick, New York City, for additional defendant, Sony Corp. of America.

MANSFIELD, District Judge.

This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201 (1964) seeking to invalidate United States Patent 3,066,247 issued November 27, 1962 to Preston Robinson, entitled "Electrical Capacitors" and assigned to defendant Sprague Electric Company ("Sprague" herein). Sprague counterclaimed for infringement and active endorsement of infringement of the Robinson patent and seeks both general and treble damages. Sony Corporation of America was joined as an additional defendant on the counterclaim.

Plaintiff and Sony ("Movants" herein) now move for summary judgment under Rule 56, F.R.Civ.P., claiming that on the undisputed facts this relief should be granted for the following reasons:

"I. Claims 1 to 4 and 6 to 8 of Robinson patent 3,066,247 are invalid by reason of late claiming.

"II. The Robinson patent is invalid because of failure to comply with 35 U.S.C. 112.[1]

"III. The Robinson patent is invalid by reason of the provisions of 35 U.S.C. Sections 102 and 103."[2]

---

1. "§ 112. *Specification*
 "The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.
 "The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.
 "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

2. "§ 102. *Conditions for patentability; novelty and loss of right to patent*
 "A person shall be entitled to a patent unless—
 "(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or
 "(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or

 \*　\*　\*　\*　\*　\*　\*

 "(e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or

 \*　\*　\*　\*　\*　\*　\*

 "(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other."

 "§ 103. *Conditions for patentability; non-obvious subject matter*
 "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented

■ Summary judgment is but rarely granted in patent cases. As the court said in Servaas & Co. v. Dritz, 185 F. Supp. 61, 63 (S.D.N.Y.1960) (Herlands, J.):

"Summary judgment will not be granted in a patent infringement case where, for example, the court lacks necessary special knowledge; or where it is desirable to hear expert witnesses and to hear them cross-examined; or where there are conflicting affidavits as to differences or similarities in construction and function; or where there are conflicts concerning the meaning of the specifications and claims, the interpretation of the file wrapper and the Patent Office action, and the significance of the prior art."

■ However, under proper circumstances where no material fact issues exist to be tried, summary judgment will be granted in a patent case, Vermont Structural Slate Co. v. Tatko Bros. Slate Co., 233 F.2d 9 (2d Cir. 1956).

The patent in suit is for an electrical condenser or capacitor known as a solid, semi-conductor electrolytic capacitor that is said by Sprague to represent an advance over the prior art in that it possesses certain "self-healing" characteristics. A capacitor consists of two conductive layers of opposed polarity called electrodes, separated from one another by a non-conductive or insulating layer which is called a dielectric. The Robinson patent provides for an intermediate layer of a dry solid semi-conductive substance such as lead peroxide ($PbO_2$), which is a conductor of electricity, to be interposed between the dielectric (with which it is placed in intimate contact) and at least one of the electrodes. Should a flaw occur in the insulating dielectric which would otherwise result in a short circuit, the lead peroxide at that point will be heated. The heating will convert it to lead monoxide which is an insulating nonconductor, and eliminate the short circuit flow of current.

The claim language of the Robinson patent (No. 3,066,247) involved in this action is a follows:

Claim 1—"a layer of solid semiconductive material in intimate contact with said dielectric film, said semiconductive material being reducible in the presence of high fields."

Claims 2, 3, 4 and 7—"a layer of semiconductive higher oxide of a metal in intimate contact with said dielectric film, said higher oxide being reducible by current flow therethrough to a nonconducting lower oxide."

Claim 5—"the semiconductive higher oxide is lead peroxide."

Claim 6—"the layer of semiconductive higher oxide of a metal is formed in situ from a compound of that metal."

Claim 8—"a layer of semiconductive dioxide of a metal formed in situ in intimate contact with said dielectric film from a compound of that metal, said dioxide being reducible by current flow therethrough to a nonconducting lower oxide."

The history of these claims may be stated briefly. Robinson originally commenced his application for a patent under an application numbered 239,645 filed August 1, 1951. It was abandoned upon the filing, on August 25, 1954, of Application Serial Number 452,014 as a continuation in part which led to the issue of the patent in suit here. These parent applications referred to lead peroxide ($PbO_2$) as the semi-conductive material in the manner of Claim 5 of the issued patent.

On May 13, 1958 the United States Patent Office, in accordance with Rule 203 of the Rules of Practice of the

and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

United States Patent Office,[3] suggested that Robinson add the language of Claim 1 for the purpose of an interference later declared between the applications of Robinson and applicants H. E. Haring and R. L. Taylor (Ser. No. 346,416, disclosing an intermediate layer of manganese dioxide ($MnO_2$) in lieu of $PbO_2$), which became Interference No. 89,529. Claim 1 was thereupon introduced on June 11, 1958 by amendment. On April 25, 1962, after a favorable ruling on the interference, Claims 2 through 8 were introduced. The original specification of the Robinson application was never amended.

Although the motion for summary judgment is addressed to the entire Robinson patent, Movants' briefs indicate [4] that their arguments based on "late claiming" and "overclaiming" are directed to Claims 1–4 and 6–8 of the patent, and not to Claim 5.

*Movants' contentions based on "late claiming"*

██ Turning first to the question of "late filing", Movants' argument is based on the premise that the disclosures and claims of Robinson's parent application were limited to $PbO_2$ and that no claim broad enough to support $MnO_2$ was asserted until the June 1958 interference amendment, which was more than one year after (1) publications and disclosures describing $MnO_2$ capacitors, and (2) defendant's sale of such capacitors.

Plaintiffs contend that their intervening rights derived from public disclosure and use of $MnO_2$ more than one year prior to the time Robinson amended his application bar Claims 1 to 4 and 6 to 8. It appears settled that if Robinson added claims which went beyond the disclosure and the original claims, an intervening disclosure or use of the subject matter of one of the added claims more than one year prior to the addition would bar that claim. Schriber-Schroth v. Cleveland Trust Co., 305 U.S. 47, 59 S.Ct. 8, 83 L.Ed. 34 (1938); RUV Engineering Corp. v. Borden Co., 170 F.2d 688 (2d Cir. 1948). The inventor's own disclosure of a species in a foreign patent specification published more than one year prior to his amendment of his United States application to add a generic claim has been held to bar the latter. In re Ruscetta & Jenny, 255 F.2d 687, 45 CCPA 968 (1958); see In re Steenbock, 83 F.2d 912, 23 CCPA 1244 (1936). Thus the original filing date is effective against intervening disclosures or uses, whether or not by the applicant, only if the original application and claims can be construed to support the claims alleged to have been barred by the intervening rights.

██ Movants argue that as a matter of law Robinson disclosed and claimed only a capacitor using $PbO_2$ as the subject of his patent. Defendant responds by asserting that the original disclosure and claims, through the doc-

3. The pertinent language of Rule 203 at the time of the interference proceeding is as follows:

"§ 1.203 *Preparation for interference between applications; suggestion of claims for interference.*

"(a) Before the declaration of interference, it must be determined that there is common patentable subject matter in the cases of the respective parties, patentable to each of the respective parties, subject to the determination of the question of priority. Claims in the same language, to form the counts of the interference, must be present or be presented, in each application.

"(b) When the claims of two or more applications differ in phraseology, but relate to substantially the same patentable subject matter, the examiner shall, if it has been determined that an interference should be declared, suggest to the parties such claims as are necessary to cover the common invention in the same language."

4. See p. 7 of Movants' Reply Brief; Par. 5 of affidavit of Robert E. Burns; and Pars. 2 and 3 of Movants' Memorandum re: facts. Although Movants state that Robinson would be permitted to claim $MnO_2$ as an equivalent under Claim 5 "Only if *that very subject matter* were specifically described" (Movants' Reply Br., p. 13) they elsewhere suggest that Claim 5 might survive their present motions to form the basis for Sprague's claim that under the doctrine of equivalents it is infringed by plaintiff's manufacture of capacitors utilizing $MnO_2$.

trine of equivalents, support the new claims so that no new material has been added. In an effort to avoid a triable issue of fact, Movants concede in reply that one skilled in the art would recognize $MnO_2$ as an equivalent of $PbO_2$ for the purposes of the invention, but contend that as a matter of law the doctrine of equivalents may not be used to constrict the later-filed claims in order to prevent them from exceeding the disclosure of the application. They argue that the doctrine of equivalents must be limited to use as a method of expanding valid claims *beyond* their literal terms to find infringement by an accused practice that superficially appears to be outside the precise language of the claims. The doctrine, however, is not so limited. It is designed to alleviate undue hardship that may result to a patentee from a literal construction of his claims, whether such construction might expand or contract the language in a particular case. It recognizes that, in a scientific world of ever-increasing complexity, language is at best an imperfect medium for achieving the distinct statement of claims required by Title 35 U.S.C. § 112, and that there may be situations where the inventor, already compelled to plot a course between the Scylla of overstatement and the Charybdis of underclaiming, should have relief against undue hardship and loss of commercial reward for his invention that might result from intervening rights if he were forced to resort to a reissue merely for the purpose of clarifying the language used. Since the object of the doctrine is to prevent inequity, there appears to be no reason why it should not be available as a means of construing language of claims to limit their apparent scope to the heart and teachings of the invention, at least where the inventor never intended the language to exceed the bounds of his disclosure and a literal reading might invalidate his claims as too broad.

■ As far as the argument of late filing is concerned, the key to the validity of the claims depends upon the range and scope of equivalents of $PbO_2$. In the case of Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 609–610, 70 S.Ct. 854, 856–857, 94 L. Ed. 1097 (1950), the court indicated that:

"What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case. Equivalence, in the patent law, is not the prisoner of a formula and is not an absolute to be considered in a vacuum. It does not require complete identity for every purpose and in every respect. In determining equivalents, things equal to the same thing may not be equal to each other and, by the same token, things for most purposes different may sometimes be equivalents. Consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform. An important factor is whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was.

"A finding of equivalence is a determination of fact. Proof can be made in any form: through testimony of experts or others versed in the technology; by documents, including texts and treatises; and, of course, by the disclosures of the prior art. Like any other issue of fact, final determination requires a balancing of credibility, persuasiveness and weight of evidence. It is to be decided by the trial court and that court's decision, under general principles of appellate review, should not be disturbed unless clearly erroneous. Particularly is this so in a field where so much depends upon familiarity with specific scientific problems and principles not usually contained in the general storehouse of knowledge and experience."

The Court is of the opinion that an issue of fact has been raised as to how broad the disclosure of the Robinson patent

is when viewed in light of other teachings in this field, and as to the range of equivalents of Claim 5 of the Robinson patent to which the patentee may be entitled. It is possible that the disclosure and claims, when viewed in light of the doctrine of equivalents, may be sufficiently broad to compel the conclusion that the later amendments represent no addition of new matter.

*The argument based on "over-claiming"*

 Movants' next argument is that Claims 1–4 and 6–8 should be held invalid for over-claiming. In essence, Movants argue that the language of these claims is so broad that on their face, read literally, they violate 35 U.S.C. § 112 which provides:

"The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."

It is settled law that claims unsupported by a disclosure or specification are invalid, and that a patent monopoly may not be extended to embrace an invention that is not described in the application in accordance with the foregoing law. Schriber-Schroth v. Cleveland Trust Co., supra; Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672 (1949); Schering Corp. v. Gilbert, 153 F.2d 428 (2d Cir. 1946); RUV Engineering Corp. v. Borden Co., supra. The reason, of course, is that the monopoly is extended only to what the invention teaches, which must be in a form that will enable one skilled in the art to practice it at the expiration of the grant. Permutti v. Graver Corp., 284 U.S. 52, 60, 52 S.Ct. 53, 76 L.Ed. 163 (1931).

 Viewing the question in this light, it becomes clear that the validity of the "over-claiming" argument depends on some of the same facts as the "late claiming" argument, i. e., what is disclosed by the specifications of the Robinson patent, and the relationship of this disclosure to the added claims. Here again the Court feels the need for ex-

pert testimony subject to cross-examination to aid it in resolving these questions.

The record already bristles with conflicting affidavits, Sprague's experts swearing that all parts of the disputed claims are disclosed in the original Robinson application and that the United States Patent Office so held, while Movants' expert (Burns) swears to the contrary. The Court does not agree with Movants' contention that the subject matter is simple and readily understandable without expert testimony, particularly in view of Movants' concession to the effect that one skilled in the art would agree that $PbO_2$ and $MnO_2$ are equivalents. Furthermore, the Patent Office, in designating the claims under attack for purposes of an interference, was aware of the contents and disclosures of the original Robinson application, and of the existence of intervening applications. Nevertheless it suggested that claims for interference be made pursuant to Rule 203 which provides that before declaring such an interference "It must be determined by the Examiner that there is common subject matter in the cases of the respective parties, patentable to each", and direct that "When the claims * * * related to substantially the same *patentable subject matter,* the examiner shall * * * suggest to the parties such claims as are necessary to cover the common invention in the same language."

In view of the foregoing circumstances, the Court, which is not skilled in the technical field of capacitors, cannot hold as a matter of law that the Robinson disclosures are limited to $PbO_2$, and that the claims eventually allowed after the interference proceeding exceed those disclosures. The situation before the Court, while differing in some respects, is comparable to that described by Judge Learned Hand in Engineering Development Labs. v. Radio Corp. of America, 153 F.2d 523 (2d Cir. 1946), where in denying summary judgment the court expressed the applicable principles as follows:

"Upon a motion for summary judgment it was improper to deny the

plaintiff the right to a trial, for we cannot know to what equivalents Cisin's original claims would have been entitled; that is a question which can never be determined until the position of the invention in the whole art has been made plain."

See Hartzell Industries, Inc. v. McCauley Industrial Corp., 304 F.2d 481, 484–85 (6th Cir. 1962); Servaas & Co. v. Dritz, 185 F.Supp. 61 (S.D.N.Y.1960); I. C. E. Corporation v. Armco Steel Corporation, 250 F.Supp. 738 (S.D.N.Y.1966); Sunbeam Corporation v. S. W. Farber Inc., 243 F.Supp. 75 (S.D.N.Y.1965).

### *The contention of invalidity based on the prior art*

Turning to the contention that the entire Robinson patent (including Claim 5, must be held invalid as a matter of law under 35 U.S.C. §§ 102 and 103 because the disclosure and claims therein are unpatentable over the prior art, the Court finds it unacceptable. Defendants argue that the Robinson patent represents no patentable advance over several earlier patents: Lilienfield 1,-906,691 issued in 1933; Duhme 1,932,067 issued in 1933; Van Geel 2,005,279 issued in 1935; and Gray 2,299,228 issued in 1942.

The affidavit of Sprague's expert (Peck) contests this. He asserts that Lilienfield shows a different self-healing process from that of the Robinson patent, and does not show any intimate contact of the dioxide with the dielectric. The graphite layer of Duhme is said to be at a different location and have a different purpose than is Robinson. Van Geel is said to use a different means of self-healing and is a wet type of capacitor. Gray is said to be for a different type of capacitor. Gray is said to be for a different type of capacitor having no electrolyte. Movants sharply dispute the accuracy of most of these assertions and the significance of all of them. The Court has examined the patents in question and feels that the aid of expert testimony will be required to elucidate the meaning of the prior art

and the relationship of the Robinson patent to it. A summary judgment that the entire Robinson patent is invalid will therefore be denied.

Movants have not pressed in their briefs the argument that a summary judgment should be granted for them on Sprague's counterclaim in the event that the Court refused to grant a summary judgment that the Robinson patent was invalid. Indeed Movants concede that the manganese dioxide they used in their capacitors is the functional equivalent of the lead peroxide mentioned in Claim 5 of Robinson's patent. The doctrine of equivalents, Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 70 S.Ct. 854 (1950), may well afford Sprague protection against the use of manganese dioxide. In any event this is a factual determination that must be made after a trial.

The motion for summary judgment is denied.

So ordered.