Henry J. MODREY, Plaintiff,

v.

AMERICAN GAGE & MACHINE COM-
PANY, Defendant.

No. 70 Civ. 3847.

United States District Court,
S. D. New York.

March 6, 1972.

Louis J. Wunder, Charles Marks, New York City, for plaintiff; Charles Marks, New York City, of counsel, on the brief.

Lauterstein & Lauterstein, New York City, Henry W. Lauterstein, New York City, of counsel and Quinn, Jacobs, Barry & Foster, Chicago, Ill., Robert O.

**1214**

Mansell, Chicago, Ill., of counsel, for defendant and counter-plaintiff.

OPINION

BONSAL, District Judge.

Plaintiff moves for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, on the ground that he is entitled to judgment as a matter of law, there being no genuine issue of material fact. In the alternative, plaintiff moves pursuant to Rule 56(d) for an order specifying the facts which are uncontroverted.

Plaintiff, doing business as Modrey Associates and owner of Patent No. 3,-448,894 issued on June 10, 1969, instituted this action against defendant, American Gage & Machine Company, on September 3, 1970 to recover damages in the amount of $15,000 with interest from June 10, 1969, plus costs and reasonable attorneys' fees, for defendant's alleged breach of a licensing agreement. Size Control Company is a division of American Gage & Machine Company, and Airtronics is a division of Size Control Company.

From the pleadings, affidavits, and the statements submitted by both parties pursuant to Rule 9(g) of the Local Rules of this Court, the following facts appear to be uncontroverted. On July 31, 1967, plaintiff filed an application in the Patent Office, Ser. No. 657,232, covering a device known as a "Pintrex" machine, which included 32 claims. The machine is a device for magnetically aligning and dispensing magnetizable pins by means of a combination of structural elements including a "magnetic feeder" disc which was rotatably mounted so as to dip into a supply of randomly oriented pins. The disc was provided with a number of magnetic elements which induced the pins to adhere to the disc in the vicinity of the magnetic elements and to be oriented with respect to their poles. In this oriented position, rotation of the disc would cause the pins to be brought, one by one, into a chute from whence they would be dispensed for the purposes of assembly.

After the patent application was filed, plaintiff entered into a License Agreement, dated June 19, 1968, with Size Control Company, paragraph 4(i) of which provided:

"4. As consideration for the exclusive license, rights and privileges herein granted, Licensee will pay to Licensor:

i. the sum of $30,000 of which $15,000 shall be paid on the signing of these presents, and the balance of $15,000 upon the issue of Letters Patent of the United States of America on Application Ser. No. 657,-232, provided that the issued Patent comprises claim(s) granting significant coverage of the magnetic feeder disc shown in Figs. 1 and 2 of said Patent Application Ser. No. 657,232."

On July 8, 1968, defendant paid plaintiff the first installment of $15,000, which is the subject of defendant's counterclaim. Defendant refused to pay the second installment of $15,000 on the grounds that the claims of the patent as issued do not grant significant coverage of the magnetic feeder disc as shown in Figs. 1 and 2 of the application. Because of defendant's failure to pay the second installment of $15,000, plaintiff terminated the License Agreement on September 9, 1969, and on October 3, 1969 defendant returned all drawings and proprietary information which plaintiff had furnished it pursuant to the License Agreement.

The patent application included two drawings, Figs. 1 and 2, which depicted among other things a magnetic feeder disc. Fig. 1 showed an elevational sectional end view of a dispensing device or feeder magazine of the invention, and Fig. 2 showed an elevational side view of Fig. 1. The detailed description of Figs. 1 and 2 in the patent application is as follows: (the numbers which correspond to numbers in the Figures are omitted).

". . . the feeder magazine or dispensing device exemplified in these figures comprises a disk made of a suitable non-magnetic material . . . . The disk is mounted on a shaft suitably journalled in the frame structure and driven in counterclockwise direction by a motor. The disk mounts on one of its sides a plurality of circumferentially spaced magnetic elements or magnet pads. These elements are generally permanent magnets . . . . The elements are in the form of flush or slightly sunk magnet pads, the North-South polarity of which is disposed in circumferential or peripheral direction. . . .

"The frame structure mounts a bin or receptacle for a supply of magnetizable discrete small items such as pins, either of the rolled type or of the solid type. The items may be made of or contain ferrous metals . . ., or may be coated with suitable magnetizable material. Disk is so disposed that the magnetic elements thereon will dip into bin during part of each revolution of the disk. As is evident, one or several items will be attracted by each element as the same passes through the supply of items and will be carried along by the disk. Accordingly, the disk and the magnetic elements thereon constitute an endless conveyor. . . .

"The device further comprises a discharge chute in the form of a tube of non-magnetic material . . . . The entry opening of the tube is disposed in the path of travel of magnetic pads and is so oriented that an elongate pad when reaching the entry opening is substantially in lengthwise alignment . . . ."

Claim 1 of the patent application read as follows:

"1. A device for successively and simply dispensing discrete magnetizable items, said device comprising in combination:

an endless non-magnetic conveyor mounted for travel along a predetermined path;

magnetic elements secured to said conveyor spaced apart in the direction of travel thereof, said conveyor being arranged to pass for part of its travel through a supply of the items to be dispensed for attracting one or several of said items by the magnetic elements as the same pass through said supply and for carrying along the attracted items in random positions and movable in reference to the magnetic elements; . . ."

Claims 4, 14, 15, 20, and 21 were all based on this device in Claim 1. In Claim 4, the magnetic elements were inserted into the conveyor of the device of Claim 1. In Claim 14, the conveyor of the device of Claim 1 became a rotary disc with the magnetic elements on one side in a circumferentially spaced relationship. In Claim 15, the selector or discharge chute was added to the device in Claim 14. In Claim 20, the magnets of the conveyor of Claim 1 became permanent magnets and in Claim 21, the magnets became electromagnets. Claim 22 was a modified form of the invention in which the endless nonmagnetic conveyor with magnets mounted in it became a tool for feeding magnetizable elements to a point of utilization. In Claim 23, the conveyor of Claim 22 became a rotary disc with the magnets mounted circumferentially.

By letter from the Patent Office mailed on July 1, 1968, Claims 1 to 15 and 26 to 30 were rejected on the grounds that they had been anticipated by the Day patent, Claims 22 to 25 were allowed and Claims 16 to 21 and 31 and 32 were objected to. The claims of the Day patent covered a device for feeding and applying magnetizable bottle caps and were primarily concerned with the process of singling the items to be dispensed. The Day patent anticipated those claims which dealt with the process of singling the pins to be dispensed. Plaintiff filed an amended application dated September 26, 1968, which stated that the claims cover a device which in addition to singling the items to be dispensed, also directionally oriented them, which was ir-

relevant in the Day patent as bottle caps are inherently incapable of being directionally oriented. To effect the dual purposes, the amended application provided that the magnetic elements were disposed generally in the North-South direction in the direction of travel of the conveyor. Since the North-South direction was the direction of strongest magnetic flux, at least one of the pins from the cluster which was attracted by the magnetic elements travelling through the supply bin would orient itself in approximately this direction. To make the purpose of directional orientation more explicit, the substance of Claim 2 which was then cancelled was incorporated into Claim 1. Claim 1 now included the following additional language which is emphasized:

"magnetic elements secured to said conveyor *lengthwise* spaced apart and *oriented generally North-South in the direction of travel thereof* . . . ."

Other changes were made in Claim 1, but they related primarily to the above limitation. There was no change in the above description of Figs. 1 and 2.

Patent No. 3,448,894 was subsequently issued on this amended application on June 10, 1969. The claims of the patent covered a device for successively and singly dispensing magnetizable items. One of the structural elements covered was a magnetic feeder disc which was rotatably mounted. The magnetic elements were secured to only one side of the disc and were lengthwise spaced apart and oriented in the North-South direction of travel. The main difference between the coverage of the claims of the original application and the claims of the patent which was issued was the North-South orientation of the magnetic elements. In the original application, there was no restriction on their orientation, while in the patent it was limited to the North-South orientation. Plaintiff contends that the North-South orientation of the magnetic elements in the claims of the patent granted significant coverage of the magnetic feeder disc under paragraph 4(i) of the Agreement. On the other hand, defendant contends

that because of the North-South orientation of the magnetic elements, the claims of the patent did not grant significant coverage of the magnetic feeder disc under paragraph 4(i) of the Agreement. Defendant's contention is based on the opinion of its patent attorney, Charles F. Pigott, Jr., who made a study of the patent in July of 1969, and the opinion of the president of Airtronics, Edward Peonski, who conducted the negotiations for the Licensing Agreement. Defendant contends that the claims of the patent do not provide significant coverage because they did not cover defendant's proposed machine where the magnetic elements were to be placed perpendicular to the plane of the disc conveyor. Hence, the license would not protect it from competition.

While the License Agreement was in force, defendant, through Airtronics, advertised the "new and advanced Pintrex Feeding and Orientation Systems", and held itself out as a licensee of plaintiff with the right to use plaintiff's trademark, "Pintrex". Immediately after the issuance of the patent, plaintiff furnished defendant with a copy thereof, including the claims which were allowed. While the record is not clear as to whether defendant continued to advertise its Pintrex machine after it had been furnished with a copy of the patent, it is clear that defendant did not raise the issue of substantial coverage until six months later.

Plaintiff contends that the term "significant coverage" is unambiguous and that it is clear what the parties intended. Montrose Contracting Co. v. County of Westchester, 80 F.2d 841, 843 (2d Cir. 1936), cert. denied, 298 U.S. 662, 56 S.Ct. 746, 80 L.Ed. 1387 (1936). Plaintiff further contends that defendant's conduct subsequent to the issuance of the patent estops it from claiming that the patent had not provided substantial coverage. Cinema Patents Co. v. Craft Film Laboratories, 64 F.2d 42, 44 (3d Cir. 1933).

On the other hand, defendant contends that there is a material issue of fact as

to whether the claims of the patent as issued gave significant coverage within the meaning of paragraph 4(i) of the Agreement. Defendant further contends that whether an estoppel can be applied in plaintiff's favor is also an issue of fact. For these reasons, defendant contends that motion for summary judgment should be denied. Xerox Corporation v. Dennison Manufacturing Company, 322 F.Supp. 963, 966–967 (S.D.N.Y. 1971); See also Kierulff Associates v. Luria Brothers & Co., 272 F.Supp. 537 (S.D.N.Y.1967); Fujitsu Limited v. Sprague Electric Co., 264 F.Supp. 930 (S.D.N.Y.1967).

■■ With the exception of Claims 1 and 15, all of the original claims which had language covering the magnetic feeder disc of Figs. 1 and 2 and the original descriptions of the two figures were allowed without change. Claim 1 was allowed when it incorporated the substance of Claim 2. Claim 15 was allowed after the inclusion of language limiting the orientation of the items to be dispensed to the North-South direction, the part which referred to the magnetic feeder disc being allowed without change. The main difference between the coverage of the claims of the patent and those of the application is the limitation imposed on the arrangement of the magnetic elements—"North-South in the direction of travel thereof". The Agreement did not provide that the term "significant coverage" was meant to cover defendant's proposed machine. Therefore, the fact that the claims of the patent would not protect its proposed machine from competition will not be considered in determining the intent of the parties as embodied in the Agreement. Rock-Ola Mfg. Corp. v. Filben Mfg. Co., 168 F.2d 919, 921 (8th Cir. 1948), cert. denied, 335 U.S. 892, 69 S.Ct. 249, 93 L.Ed. 430 (1948); Ben Pearson, Inc. v. John Rust Co., 223 Ark. 697, 268 S.W.2d 893 (1954), cert. denied, 348 U.S. 853, 75 S.Ct. 60, 99 L.Ed. 672 (1954). Defendant's counsel studied the patent application before entering into the Agreement and by letter of June 19, 1968 plaintiff warned defendant that Claim 1 was very broad and might not be allowed. Defendant could have required a more detailed definition of "significant coverage" in the Agreement, but not having done so, the court will not read one in. Florida Canada Corp. v. Union Carbide & Carbon Corp., 280 F.2d 193 (6th Cir. 1960), cert. denied 364 U.S. 902, 81 S.Ct. 234, 5 L.Ed.2d 194 (1960); National Pigments & Chemical Co. v. C. K. Williams & Co., 94 F.2d 792 (8th Cir. 1938); Black v. Richfield Oil Corp., 41 F.Supp. 988 (S.D.Calif.1941), aff'd, 146 F.2d 801 (9th Cir.), cert. denied, 325 U.S. 867, 65 S.Ct. 1404, 89 L.Ed. 1986 (1944). The words "significant coverage" were put in at the request of Size Control Company and for its benefit. Consequently, if there is any ambiguity, it should be strictly construed against defendant. National Pigments & Chemicals Co. v. C. K. Williams & Co., *supra.*

■ For the foregoing reasons, the court finds that the patent issued to the plaintiff provided significant coverage under the License Agreement.

■ Defendant contends that the License Agreement is illegal and void in that it provides for royalty payments beyond the life of the patent. Brulotte v. Thys Co., 379 U.S. 29, 32, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964), rehearing denied, 379 U.S. 985, 85 S.Ct. 638, 13 L.Ed.2d 579 (1965). Paragraph 4(iii) provides:

"4. . . .

"iii. In the event that the last to issue United States or Canadian Patent on the Pintrex System or any improvements or developments thereof has lapsed, this agreement shall continue for the commercial life of the Pintrex System and Pintrex Machines, as a Know-How and Trade Mark License, but the rate of earned royalties shall be reduced to 3% . . . and no minimum royalties shall be payable by Licensee. . . . ."

Brulotte v. Thys Co., *supra*, holds only that the provision providing for royalty payments after the expiration of the patent is unenforceable. Such a provision does not invalidate the Agreement. *See* Ar-Tik Systems v. McCullough, 133 F. Supp. 807 (D.C.Ill.1955).

The remaining contentions of the defendant are without merit.

■ Accordingly, for the foregoing reasons, plaintiff's motion for summary judgment is granted. As there was no evidence of intentional infringement of plaintiff's patent by the defendant, plaintiff's application for attorneys' fees is denied. 35 U.S.C. § 285; American Safety Table Co. v. Schreiber, 415 F.2d 373, 380 (2d Cir. 1969), cert. denied, 396 U.S. 1038, 90 S.Ct. 683, 24 L.Ed.2d 682 (1970). Costs will be allowed the plaintiff.

Settle judgment on notice.