**Henry J. MODREY, Plaintiff-Appellee,**

v.

**AMERICAN GAGE & MACHINE COMPANY, Defendant-Appellant.**

**No. 282, Docket 72-1534.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 13, 1973.

Decided May 1, 1973.

Charles F. Pigott, Jr., Chicago, Ill. (Robert O. Mansell, Chicago, Ill., and Henry W. Lauterstein, New York City, of counsel), for defendant-appellant.

Charles Marks, New York City (Louis J. Wunder, New York City, of counsel), for plaintiff-appellee.

Before FRIENDLY, Chief Judge, OAKES, Circuit Judge, and DAVIS, Judge.*

* Of the United States Court of Claims, sitting by designation.

OAKES, Circuit Judge:

This appeal is from a summary judgment granted to a patent licensor against his licensee in a suit for the second payment allegedly due under the license agreement. That license agreement has now been terminated. Out of the usual maze of claims, counterclaims, and cross claims which patent litigation so frequently entails emerges one central question. The question is whether the district court was correct in concluding that no triable issue of fact is raised by appellant's contention that under the terms of the license agreement, which was executed before the patent itself was granted, the patent claims ultimately granted to the appellee-licensor did not contain "significant coverage" of the licensed device. The device is an automatic dispenser of magnetizable items such as screws, pins, rivets and the like. For reasons that will appear below, we believe that the district court was incorrect: a triable issue of fact does appear. Accordingly the summary judgment must be reversed and the cause remanded. The decision of the district court is reported at 339 F.Supp. 1213.

Appellee Modrey, an inventor, and one Steinmeyer (from whom Modrey took an assignment) applied on July 30, 1966, for the patent now at issue. The invention has some reference in the trade as "Pintrex" or as a "Pintrex" machine or as a part of a "Pintrex" system. After filing the application Modrey entered into a license agreement with C.E.M. Company, a manufacturer, in no way related to the appellant, of "spring pins," which are simply small, straight, cylindrical rods. Subsequently Modrey entered also into negotiations with Size Control Company (hereinafter "Size Control"), a division of the appellant, concerning a further license to use and exploit the "Pintrex" device.

These negotiations were essentially in three stages, and culminated in the license agreement now in issue. The first stage established, among other things, that Size Control would pay Modrey two installments of $15,000 each, one on the signing of the license, the second upon the issuance of a patent, although the terms of the patent grant were not established at this stage. The invention referred to was described in the application as including the following general features: a frame provided with a bin or receptacle containing a quantity of the items to be dispensed, such as pins or screws; a rotary conveyor, consisting of either a disc or a drum, supported by the frame and dipping into the bin or receptacle; a number of elongated magnets so affixed to the disc (it is unnecessary for present purposes to refer to the drum) as to attract to its surface the items to be dispensed; and a passageway or chute so aligned with the magnets that upon rotation of the disc the items would be brought one by one into the passageway or chute whence they could be dispensed in the given manufacturing or packaging operation.[1] The disc was referred to in the negotiations and will be referred to in this opinion as a "magnetic feeder disc."

In the second stage of negotiations Size Control took the position that the license agreement should be modified so as to make the payment of the second installment of $15,000 (for which Modrey instituted this suit) conditioned not upon the grant of any patent under the application but only upon the grant of a patent *containing the first claim thereof* —Claim 1—as it then existed. Claim 1 rather broadly referred to a conveyor having magnetic elements spaced apart in the direction of travel with the conveyor arranged to pass for part of its travel through a supply of the items to be dispensed, and a conventional discharge chute along the path of the mag-

---

1. Except in Figures 1 and 2 in the application for a patent, a guide or series of guides also is shown; such a guide is described as having the purpose better to align the items on the disc for passageway through the dispensing chute.

netic elements.[2] Because Modrey pointed out that Claim 1 was quite broad and that the Patent Office often requires the language of a broad claim to be narrowed in scope, he refused to agree to Size Control's proposal.

The parties compromised in what we term the third stage of negotiations, and payment of the second installment by Size Control was conditioned upon the grant of claim(s) containing "significant coverage of the magnetic feed disc as shown in Figs. 1 and 2." It is of this stuff that commercial law suits are so often made: a compromise to reach agreement, leaving undefined except ultimately by the court the specifications of the compromise—the word might as well have been the much overworked "substantial." It is in connection with just such ambiguous terms that, as Professor Corbin reminds us, see 3 A. Corbin, Contracts § 542 (1960), proof of surrounding circumstances and the use of other extrinsic aids to interpretation are so important in reaching a result that in the end is after all at best, perhaps, an informed guess based upon subsequent rationalization.

At this point of negotiations, Modrey executed the license agreement, on June 19, 1968.[3] The agreement was also executed by Size Control, on July 8, 1968, and it paid the first installment of $15,000 to Modrey as required. Meanwhile, however, the patent office had, on July 1, 1968, issued its first Action on the application, rejecting Modrey's Claims 1–15 among others, including the broad claims relative to the "magnetic feeder disc" shown in Figures 1 and 2; the rejection was under 35 U.S.C. § 102, on the basis that the claims were anticipated by the prior art, specifically Patent No. 2,836,947 and Patent No. 3,065,841. Each of these patents related to a selection and feeder device (or dispenser) using apparently a disc or drum with imbedded magnets to attract objects such as bottle caps from a bin or receptacle and to feed them into a chute. We say "apparently" because these patents are not part of the formal record, although they have been furnished to us gratuitously by the appellant in a special appendix.

Modrey did not advise Size Control of the action by the Patent Office, but so

2. The first claim as originally submitted was for the following:

1. A device for successively and singly dispensing discrete magnetizable items, said device comprising in combination:

an endless non-magnetic conveyor mounted for travel along a predetermined path;

magnetic elements secured to said conveyor spaced apart in the direction of travel thereof, said conveyor being arranged to pass for part of its travel through a supply of the items to be dispensed for attracting one or several of said items by the magnetic elements as the same pass through said supply and for carrying along the attracted items in random positions and movable in reference to the magnetic elements; and

a stationary selector means including a passage opening having an outline approximately corresponding to the outline of the items to permit passage of a single item only and in a predetermined position thereof in reference to said passage opening, said selector means being disposed posterior of the location of the supply and across the path of the magnetic elements whereby an at least partial engagement of an item on any one of the magnetic elements with said opening in the selector means causes the engaged item to move on its magnetic element into a position oriented for passage of said item through said opening and to be pulled through the opening by the continued movement of the respective magnetic element while any other items carried on the same magnetic element are stripped therefrom at the selector means.

Each of the claims numbered 2, 4, 14, 20 and 21—all ultimately granted—is dependent upon Claim 1 since it relates to "A device according to Claim 1."

3. Modrey had worked out an agreement with C.E.M. Company whereby it consented, since it was primarily interested only in spring pins, to use of the "Pintrex" by Size Control for certain types of cylindrical pins, pin rollers which are headless nails, nails of any type, taperpins, cotter pins, rivet eyes, eyelets, washers and spacers.

narrowed his Claim 1 as hopefully to avoid the problem encountered. Whether or not the narrowing of the claim rendered the "coverage" of the magnetic feeder disc no longer "significant" is the question of law we must determine preliminarily. If we decide that there are genuine issues of material fact raised in appellant's affidavits on this point then we must remand to the district court for a taking of evidence. Fed.R.Civ.P. 56(e); *see* First National Bank v. Cities Service Co., 391 U.S. 253, 288–290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); Dolgow v. Anderson, 438 F.2d 825, 827 (2d Cir. 1971).

■■ Crucial to decision on the preliminary question of law is the way in which Claim 1 and accordingly its dependent claims were narrowed to obtain the patent. What had been referred to in the application as "magnetic elements secured to said conveyor spaced apart in the direction of travel" was amended to read "magnetic elements secured to said conveyor lengthwise spaced apart and oriented *generally north-south* in the direction of travel thereof" (emphasis supplied). The case turns on whether a magnetic feeder disc patent, limited in its claims to one in which the magnetic elements are oriented generally north-south, has genuine significance or, in the words of the license, "significant coverage." If it is immaterial in which direction the magnetic elements are "oriented," then obviously the coverage is insignificant; indeed, there may well be anticipation by the prior art.[4] But if the orientation of the magnetic elements of the disc is material, as, for example, in some way to aid alignment or passage into the dispensing chute, then the ap-

pellee really has something, a patent which significantly covers the original claim. It is precisely on this point that we believe there is a genuine issue of material fact.

The affidavit of Edward Peonski, an engineer but the president of and chief negotiator for Airtronics, the Size Control division wanting to use the Pintrex, states that it is "wholly unnecessary to orient the magnets generally north-south in the direction of travel thereof" and that the "desired orientation of the items to be dispensed could readily be accomplished by mechanical guide means and the like independent of the magnetic elements." Indeed, Modrey's own patent application indicates as much, because its Figures 12 and 13 specifically show the magnetic elements aligned at about a 45-degree angle, thus permitting a headed screw to be dispensed in the usual fashion through the use of a mechanical guide or guides. (No claim is made for the mechanical guides.) Beyond this the specifications of the Modrey patent point toward such an *angular* orientation with reference to the precise use contemplated by Size Control, viz., for dispensing headed screws, in saying:

> As is readily evident from an analysis of the previously described figures, the selectors as shown in these figures are not capable of differentiating whether one or the other end of an item faces forwardly when it passes *through a gate*. To effect such directional differentiation, magnetic pads 45 of the kind previously described are *disposed at an angle to the circumferential direction rather than aligned with the same* as is shown in

4. Appellant contends that the patent in suit is invalid because Patent No. 2,836,947 contained the same north-south alignment. This contention was not raised or passed on below and we also do not pass on it. Because a remand and trial are required to dispose of other contested issues of material fact, however, we note that appellant may, with the district court's consent, *cf.* Fed.R.Civ.P. 15(a), amend its plead-

ings to raise the issue of invalidity then. *Cf.* Lear, Inc. v. Adkins, 395 U.S. 653, 663–664, 89 S.Ct. 1902, 1908, 23 L.Ed.2d 610 (1969), *quoting with approval* Pope Mfg. Co. v. Gormully, 144 U.S. 224, 234, 12 S.Ct. 632, 36 L.Ed. 414 (1892). ("It is as important to the public that competition should not be repressed by worthless patents, as that the patentee of a really valuable invention should be protected in his monopoly . . . .")

all previously illustrated embodiments. (Emphasis supplied.)

The district court handled this question of "significance" of "north-south orientation" by saying:

> The main difference between the coverage of the claims of the patent and those of the application is the limitation imposed on the arrangement of the magnetic elements—"North-South in the direction of travel thereof". The Agreement did not provide that the term "significant coverage" was meant to cover defendant's proposed machine. Therefore, the fact that the claims of the patent would not protect its proposed machine from competition will not be considered in determining the intent of the parties as embodied in the Agreement. Defendant's counsel studied the patent application before entering into the Agreement and by letter of June 19, 1968 plaintiff warned defendant that Claim 1 was very broad and might not be allowed. Defendant could have required a more detailed definition of "significant coverage" in the Agreement, but not having done so, the court will not read one in. The words "significant coverage" were put in at the request of Size Control Company and for its benefit. Consequently, if there is any ambiguity, it should be strictly construed against defendant.

339 F.Supp. at 1217 (citations omitted).

We think, however, that it was not a question whether appellant's "proposed machine" was protected from competition, but whether coverage of a magnetic feeder device with north-south orientation was significant. If a magnetic device with the aid of non-patentable mechanical guides works as well with angular orientation of the magnets as with north-south orientation, then the coverage is really unimportant as we view it. Anyone using magnets on a feeder disc and mechanical guides could compete successfully with the *claimed* device, not just with appellant's "pro-

posed machine." In saying this, however, we do not mean to invade the district court's province, for it is possible that evidence will disclose that with a north-south orientation, because that is "the direction of strongest magnetic flux," 339 F.Supp. at 1216, the feeder disc would work more efficiently in some way that does not appear to us. This, it seems to us, is the principal question of factual significance for resolution below; if answered in the negative, it would seem that Modrey would not have met the contractual requirements.

Our highlighting the question of significant coverage rather anticipates our rulings in reference to the plaintiff-appellee's claims of estoppel or waiver by appellant's promotional and sales efforts in connection with the "Pintrex" device and failure to object to the coverage of the patent granted, even though frequently reminded of appellee's $15,000 claim, until several months after the issuing of the patent. We hold that there was no estoppel as a matter of law since it appears that Size Control had not been advised by Modrey of the original Patent Office action rejecting the application and the steps taken to amend it accordingly. On remand the factual basis on which appellant relied in marketing the "Pintrex" will more fully appear and the issue of estoppel can be dealt with accordingly.

We have already said, *supra* note 4, that appellant may raise the issue of invalidity on remand with district court consent. Appellant also urges illegality because the license agreement permitted royalties to accrue after the patent in question had expired. Brulotte v. Thys Co., 379 U.S. 29, 30, 85 S.Ct. 176, 13 L. Ed.2d 99 (1964), however, held that only as concerns after accrued royalties is an agreement illegal, and that such later accruing royalties are uncollectable. But this does not affect the appellee's claim to the royalty payment here involved, one due long before expiration of

the patent. *See also* Atlas-Pacific Engineering Co. v. Geo. W. Ashlock Co., 339 F.2d 288, 289 n. 1 (9th Cir. 1964).

We reverse the judgment below and remand for trial in accordance with this opinion.