James **MILLER**, Appellant,

v.

**NEWS SYNDICATE CO., Inc.,** Appellee.

**Helen Parthenios MILLER,** Appellant,

v.

**NEWS SYNDICATE CO., Inc.,** Appellee.

Nos. 446, 447, Dockets 35290, 35291.

United States Court of Appeals,
Second Circuit.

Argued May 5, 1971.

Decided June 11, 1971.

Richard H. Simons, Milford, Conn., for appellants.

Peter G. Kelly, Hartford, Conn. (Updike, Kelly & Spellacy, P. C., Hartford, Conn., on the brief), for appellee.

Before LUMBARD, SMITH and KAUFMAN, Circuit Judges.

LUMBARD, Circuit Judge:

James Miller and his wife Helen Parthenios Miller appeal from orders of the District of Connecticut, Blumenfeld, J., granting defendant News Syndicate's motion for summary judgment in their diversity actions for libel and invasion of privacy. We affirm the judgment below.

The basis of the Millers' complaints is an article which appeared in *The New York Daily News* on June 20, 1964. The article described the arrest of five persons including Miller on an indictment which alleged their participation in "the largest and most profitable heroin smuggling syndicate in the world." It asserted that Miller had legally changed his name which formerly was Frank Coppola

and that he was an ex-convict who "masqueraded as a legitimate businessman in the swank Connecticut suburbs" where he operated a string of beauty salons. According to the article, he lived on a plot of 25 acres in a rambling ranch-style home which was set "idyllically" on a tree-shaded hill in Orange, Connecticut, and was "well known to Connecticut State Police" although to outward appearances he was "a pillar of the community."

Miller's complaint alleged that *The Daily News'* article contained material concerning him which was "false, malicious, and defamatory." [1] He further alleged that on May 19, 1965 he had demanded that the *News* retract the article, but that they refused to do so. Compensatory and punitive damages of $2,000,000 were claimed for the alleged libels and an additional $1,000,000 was sought on the theory that publication of the article violated his right to privacy.

The district court found that under the Connecticut Retraction Statute a plaintiff in a libel suit, who is unable to prove that he requested a retraction within a reasonable time, cannot recover damages unless he can prove that the article was published maliciously or he is able to allege and prove special damages as a result of the publication. Conn.Gen.Stat. § 52–237 (1949). [2] Judge Blumenfeld held that appellant's request for retraction more than eleven months after the article appeared was unreasonably late

as a matter of law, and his inability to prove malicious publication and failure to allege and prove special damages prevented any recovery. He then went on to find that the article in question was conditionally privileged because it was "a fair and accurate report of judicial and official proceedings" and "fair comment on a matter of public interest." He also found that the article did not violate plaintiffs' right to privacy because it was protected by the defense of "newsworthiness." Having found that plaintiffs could not prevail on any of their claims, the district court granted defendant's motion for summary judgment and dismissed the case.

Appellants argue that the district court erred in granting summary judgment to the appellee because there were disputed issues of fact which should have been resolved by the jury rather than the judge. According to appellants, those disputed issues primarily concerned how much of what was printed was privileged —i. e., how much of it came from legitimate official sources and how much was the product of the *News'* reporters' allegedly malicious imaginations.

■■ We reject this contention. On the record before us, which consisted of extensive interrogatories, depositions, and affidavits, it is clear that the *News'* article was privileged as a fair comment on official proceedings, and hence that there was no genuine issue of material fact. [3] The *News'* reporters based their

---

1. We take judicial notice of the fact that appellant James Miller has been acquitted of the charge of conspiring to import heroin in violation of 21 U.S.C. §§ 173–174. At his first trial before the United States District Court of Connecticut he was convicted and sentenced to 12 years imprisonment. His conviction was affirmed by us on June 26, 1967. United States v. Miller, 381 F.2d 529 (2 Cir. 1967). However, on March 14, 1969, we reversed the denial of Miller's motion for a new trial. United States v. Miller, 411 F.2d 825 (2 Cir. 1969). The new trial resulted in an acquittal by the jury.

2. The Connecticut Retraction Statute
 Sec. 52–237—Damages in Actions for Libel

In any action for a libel the defendant may give proof of intention; and unless the plaintiff proves either malice in fact or that the defendant, after having been requested by him in writing to retract the libelous charge, in as public a manner as that in which it was made, failed to do so in a reasonable time, he shall recover nothing but such actual damage as he may have specially alleged and proved (1949 Rev., 7983).

3. See Fed. R. Civ. P., R. 56(e). See Also Perma R. & D. Corp. v. Singer Co., 410 F.2d 572 (2d Cir. 1969) and First National Bank v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

**358**

story on reliable sources—national wire services and personal interviews with Customs officials—so they can hardly be accused of gross negligence, much less actual malice. Appellants' suggestion that the *News* should have stopped the presses when it learned that the Miller home rested on a plot of less than 25 acres is fatuous. The only item in the story open to possible dispute as to whether it came from an official source was that Miller was an "ex-convict," "well known to Connecticut State Police." There is no dispute as to the truth of these statements, however, and the *News* did invoke the defense of truth with respect to them. The term "masquerade" in describing Miller's beauty parlor business was a fair comment because it is a logical sequela of Miller's dual role as an above-board beautician and underground dope smuggler. On the whole, the event was newsworthy, there was no lack of checking of official sources, and any deviations from or embellishments upon the information obtained from those sources was minuscule—due, as Judge Blumenfeld found, to "a little touch of [the reporter's] piquant pen." Accordingly, the district court was perfectly justified in granting summary judgment on the ground that the *News* article was fair comment and therefore privileged, and that there was no showing of any facts from which a finding of malice could be made, much less a showing of "clear and convincing proof that the defamatory falsehood was published with knowledge that it was false or with reckless disregard of whether it was false or not." Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 28 L.Ed.2d 296 (1971).

We find it unnecessary to reach the alternative ground for granting summary judgment relied upon below, based upon the Connecticut Retraction Statute.

 Appellants' allegation charging invasion of privacy is frivolous in view of the legitimate newsworthiness of the arrest of alleged smugglers responsible for importing major quantities of heroin into this country. We have examined the appellants' remaining contentions and find them to be wholly without merit.

Affirmed.