J. Gordon EDWARDS, Ph.D., et al., Plaintiffs,

v.

NATIONAL AUDUBON SOCIETY, INC., et al., Defendants.

No. 73 Civ. 1727.

United States District Court, S. D. New York.

April 15, 1976.

don & Zweibel, Mineola, N. Y., for defendants National Audubon Society, Inc., Robert S. Arbib, Jr., Roland C. Clement and Elvis J. Stahr, Jr.; Charles L. Trowbridge, New York City, and Morris Zweibel, Mineola, N. Y., of counsel.

METZNER, District Judge:

█ Defendant The New York Times Company, Inc. moves for certification permitting immediate appeal to the Court of Appeals from an interlocutory order denying its motion for summary judgment. 28 U.S.C. § 1292(b). The other defendants join in that motion or, in the alternative, seek reargument of the order. The motion for reargument is granted and, upon reargument, the original opinion is modified to the extent that in this motion by defendants for summary judgment, the burden is on the plaintiffs to show that the defendants acted with actual malice in publishing the alleged libelous statement.

In *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686, 706 (1964), the Court set forth the rule that for a public figure plaintiff to recover for defamatory falsehood, he must prove "that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

█ On this motion the evidence relied on by the plaintiffs and the inferences to be drawn therefrom are to be viewed "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176, 177 (1962); *Goldwater v. Ginzburg*, 414 F.2d 324, 337 (2d Cir. 1969). It is then measured against the more stringent standards under First Amendment protection applied against a plaintiff in determining a defendant's motion for summary judgment in a libel suit. *Miller v. News Syndicate Co.*, 445 F.2d 356 (2d Cir. 1971); *Guitar v. Westinghouse Electric Corporation*, 396 F.Supp. 1042, 1053 (S.D.N.Y.1975); *Meeropol v. Nizer*, 381 F.Supp. 29, 32 (S.D. N.Y.1974).

Rothwell, Cappello & Berndtson, Washington, D. C., for plaintiffs; Thomas A. Rothwell, Washington, D. C., Randolph J. Seifert, New York City, of counsel.

Cahill, Gordon & Reindel, New York City, for defendant The New York Times Co., Inc.; Floyd Abrams, Eugene R. Scheiman, New York City, of counsel.

Gifford, Woody, Carter & Hays, New York City, Crowe, McCoy, Agoglia, Cong-

The article in the issue of "American Birds" with which the Times' story was concerned, stated that "Any time you hear a 'scientist' say the opposite, you are in the presence of someone who is being paid to lie, or is parroting something he knows little about." The Times' story, both in headline and lead sentence, refers to the portion of the quotation from the magazine calling certain scientists liars. Under a subhead, "Accused Men Named," the story goes on to state that the writer of the quoted portion furnished the Times' reporter with the names of those who would be identified as liars. The Times' story published those names in the alleged offending article on August 14, 1972.

Defendant Arbib is the author of the quoted portion from "American Birds." On deposition, he unequivocally states that when he furnished the names to Devlin, the Times' reporter, he made it abundantly clear that they were not to be included as members of a group who were being paid to lie, but were to be included in a group referred to in the article who misconstrued the data.

■ Devlin on deposition flatly denies that Arbib placed the furnished names in any specific category. Devlin says he merely asked for the names of persons referred to by the article and was given those which appear in the news story. In essence, we are confronted with what may be called a "one on one" situation. If the finder of the fact believes Arbib and disbelieves Devlin, then a jury would be justified in finding plaintiffs have sustained their burden of showing actual malice. If the rule were to be otherwise, then a libel action could never be maintained in a "one on one" situation. The truth in our adversary system can only be ascertained when the jury listens to the testimony, observes the manner in which the testimony is given, and is afforded the opportunity of listening to the cross-examination of both witnesses. The court cannot usurp this function, and the cases relied on for the proposition that where First Amendment rights are at stake, there is a heavier burden on the plaintiff to defeat a

defense motion for summary judgment, are not in point on the factual situation presented here.

■■ Certainly it cannot be presumed as a matter of law that a reporter is always telling the truth. The reasons given by the Court for limiting the scope of libel suits under the impact of the First Amendment in cases involving public figures do not include protection against deliberate falsehood.

■ The rule in *St. Amant v. Thompson*, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968) is that:

"[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice." *Id.* at 731, 88 S.Ct. at 1325, 20 L.Ed.2d at 267.

This statement is a summary of the decisions in *New York Times Co. v. Sullivan, supra,* and *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 153, 87 S.Ct. 1975, 1990, 18 L.Ed.2d 1094, 1110 (1967). If the jury believes Arbib's statement and disbelieves Devlin, then the Times was aware of the falsity of the publication. The above quotation from the *St. Amant* case is followed by:

"[S]uch a test puts a premium on ignorance, encourages the irresponsible publisher not to inquire, and permits the issue to be determined by the defendant's testimony that he published the statement in good faith and unaware of its probable falsity. . . . Neither lies nor false communications serve the ends of the First Amendment, and no one suggests their desirability or further proliferation. But to insure the ascertainment and publication of the truth about public affairs, it is essential that the First Amendment protect some erroneous pub-

lications as well as true ones." *St. Amant v. Thompson,* 390 U.S. at 731–32, 88 S.Ct. at 1326, 20 L.Ed.2d at 267.

The issue in the instant case is not ignorance or mere failure to inquire, or the protection of some erroneous publication. The issue is who is telling the truth and the resolution of that issue must await the trial.

As far as the Audubon defendants are concerned, the resolution of the disputed conversation between Arbib and Devlin will also dispose of that claim.

Consequently, the original order denying summary judgment is adhered to.

▮ The request for certification is denied. The case is ready for trial and a maximum of five trial days will be required. The trial will proceed on June 3, 1976. The case will be disposed of before argument would be heard by the Court of Appeals if certification were granted. Further, the disposition at trial may render moot the question sought to be reviewed. Thus, the requirement of Section 1292(b) that an immediate appeal "may materially advance the ultimate termination of the litigation" has not been met.

Counsel will arrange with Magistrate Hartenstine for a conference during the week of May 10, 1976, for the submission of a pretrial order.

So ordered.