STONE CONTAINER CORPORATION

v.

OWENS–ILLINOIS, INC.

Civ. A. No. 80–1059.

United States District Court,
N. D. Georgia,
Atlanta Division.

Nov. 18, 1981.

Miles J. Alexander, Kilpatrick & Cody, John S. Pratt, Atlanta, Ga., Myron C. Cass, Silverman, Cass & Singer, Ltd., Chicago, Ill., for plaintiff.

George M. Hopkins, Newton, Hopkins & Ormsby, Atlanta, Ga., John R. Nelson, Owens-Illinois, Inc., Toledo, Ohio, for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

This action for patent infringement is now before the Court on three motions by Defendant, including one for summary judgment, and on Plaintiff's motion for attorney's fees and expenses incurred in a prior discovery motion. Defendant has denied infringement, raised various defenses, including that of invalidity of the patent, and asserted counterclaims, including claims arising under federal antitrust laws and under state law on unfair competition and deceptive trade practices.

On April 2, 1981, after *in camera* inspection, this Court granted in part and denied in part Defendant's Motion To Compel Production of Documents. The Court found that some, but not all, the documents at issue were protected by the attorney-client privilege. The Court held that those not protected were drafts of the patent application and drawings and notes relating thereto. On June 23, 1981, however, upon reconsideration, this Court held these materials to be within the privilege. In so finding, the Court recognized that there existed a split of authority as to whether "technical information" such as contained in these documents was an exception to the attorney-client privilege in the patent law area.

The June 23, 1981 Order also dismissed a motion by Plaintiff to compel Defendant's answers to interrogatories Nos. 54, 58, 59 and 64 as moot, but directed that Defendant show cause why an award of attorney's fees and expenses pursuant to F.R.Civ.P. 37(a)(4) should not be granted.

### I. *Interlocutory Appeal*

Defendant now moves for an amendment to the June 23 Order which would allow an immediate appeal from the Court's holding that no exception to the attorney-client privilege exists for technical information in the patent law area.

Defendant claims that the information sought is relevant to its allegations of false representations on the part of Plaintiff to the patent office and to Plaintiff's knowledge of prior art. *See* Memorandum in Support of Defendant's Motion to Amend the Order of the Court Dated June 23, 1981, at 5. Defendant argues that these allegations, if proven, would tend to show fraud on the Patent Office and would thus invalidate the patent.

 Particularly in light of the Court's granting of Defendant's summary judgment motion, *infra*, the Court remains unconvinced that permitting an interlocutory appeal now might "materially advance the ultimate termination of this litigation," as required by 28 U.S.C. § 1292(b). In general, discovery orders do not present "controlling questions of law" capable of significantly advancing litigation so as to justify interlocutory appeal. *See* Wright, C. & Miller, A., Federal Practice and Procedure, § 2006 at 31 (1970 ed.); *North Carolina Association of Black Lawyers v. North Carolina Board of Law Examiners*, 538 F.2d 547 (4th Cir. 1976); *McKillop v. Regents of University of California*, 386 F.Supp. 1270, 1279–81 (N.D.Calif.1975); *Bourget v. Government Employees Insurance Co.*, 48 F.R.D. 29, 36 (D.Conn.1969). As Plaintiff points out, Defendant has had the opportunity to depose the individual originally named as inventor in Plaintiff's first draft of the patent and to depose one of the two ultimate patentees. *See* Plaintiff's Memorandum in Opposition to Defendant's Motion to Amend the Order of the Court Dated June 23, 1981, at 41. This is not, therefore, an extraordinary case such as *Hyde Construction Co. v. Koehling Co.*, 455 F.2d 337, 338–39 (5th Cir. 1972) justifying certification of a discovery question. The instant case is similarly distinguishable from *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146 (D.S.C.1974), a multi-district patent anti-trust action involving the partial grant of a motion to produce some 4,500 documents. This is unlike the class action in *Garner v. Wolfinbarger*, 430 F.2d 1093,

1096–7 (5th Cir. 1970), *cert. denied sub nom., Garner v. American Life Insurance Co.*, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971), involving securities and common law fraud where a motion to produce would affect the scope of the evidence in a complex case. *Cf. Carr v. Monroe Manufacturing Co.*, 431 F.2d 384, 386 (5th Cir. 1970), *cert. denied sub nom., Aldridge v. Carr*, 400 U.S. 1000, 91 S.Ct. 456, 27 L.Ed.2d 451 (1971) (employment discrimination class action, discovery order appealable other than under 28 U.S.C. § 1292 where governmental interest asserted and government not a party).

The Court has this day granted Defendant's Motion for Summary Judgment of Non-Infringement and has ordered the parties to submit a joint statement of the issues remaining in this case for trial. *See* Part IV, *infra*, this opinion. The discovery period in this case has closed. Submission of proposed findings is due twenty days from the date of entry of this Order. *See* Consent Order filed June 4, 1981. Given the present stance of the case, therefore, and the scope of the materials at issue, it is unlikely that an appeal would materially advance its ultimate outcome. *See Securities & Exchange Commission v. Canadian Javelin, Ltd.*, 451 F.Supp. 594, 598 & n.10 (D.D.C.1978). In addition, it is possible that the summary judgment decision or the outcome of the trial will moot the issue. *Cf. Edwards v. National Audobon, Inc.*, 411 F.Supp. 744 (S.D.N.Y.1976) (certification of appeal from denial of summary judgment refused where case ready for trial and trial might moot issue).

Allowing an interlocutory appeal in the instant case would avoid neither piecemeal litigation nor unnecessarily time wasting final judgment appeal. Certification would therefore not serve the purposes of 28 U.S.C. § 1292(b). Defendant's Motion to Amend the Order of June 23, 1981 is DENIED.

## II. *Attorneys' Fees and Expenses*

The Court is now called upon to decide whether attorney's fees and expenses pursuant to Fed.R.Civ.P. 37(a)(4) should be awarded on Plaintiff's Motion to Compel Defendant's answers to certain interrogatories. This motion was dismissed as moot on June 23, 1981. The Court, on March 6, 1981, awarded Plaintiff fees and expenses in connection with a separate request to compel Defendant to fully respond to an interrogatory. Although the Court found that by the time of its June 23 Order, Defendant had "sufficiently responded" to Plaintiff's Interrogatories Nos. 54, 58, 59 and 64, an adequate response, forthcoming only after motion to compel has been filed, does not necessarily prevent the award of fees and expenses. *See e.g., Quaker Chair Corp. v. Litton Business Systems, Inc.*, 71 F.R.D. 527, 537 (S.D.N.Y.1976).

The facts in the instant case, however, are much less extreme than in *Quaker Chair.* Defendant never categorically refused to answer the question, but instead stated that it needed to confer further with anti-trust counsel on whether disclosure of the material was prohibited by a prior consent decree. Under these circumstances, and in view of Defendant's responses prior to the June 23 Order, the Court deems an award of attorney's fees pursuant to Fed.R. Civ.P. 37(a)(4) inappropriate. Plaintiff's request for attorney's fees and expenses in connection with its motion to compel answers to Interrogatories Nos. 54, 58, 59 and 64 is DENIED.

## III. *Motion to Compel*

Defendant's Motion to Compel Answers to Questions in Oral Examinations was filed July 1, 1981. Discovery in this case closed on May 18, 1981. The deposition giving rise to this motion took place on May 5, 1981. Pursuant to Local Court Rule 181.-31, the Court refuses to entertain this motion. Defendant's Motion to Compel Answers to Questions in Oral Examination is DENIED because it was untimely filed.

## IV. *Motion for Summary Judgment*

Defendant has moved for summary judgment on the ground of non-infringement. Plaintiff has accused Defendant's carton of

infringement directly and under the doctrine of equivalents. *See* Plaintiff's Memorandum Opposing Defendant's Motion for Summary Judgment of Non-Infringement [hereinafter cited' as Plaintiff's Memorandum] at 17. For the reasons given hereinafter, the Court GRANTS Defendant's Motion.

■■ The following material facts are not in dispute: Plaintiff has been issued a patent, United States Patent No. 3,744,705 (July 10, 1973) [hereinafter cited as the '705 Patent]. *See* '705 Patent, Defendant's Exhibit A. This patent contains Claims[1] 4 and 5, which were allegedly infringed by Defendant. Claim 4 teaches (discloses) the construction of a "wrap-around"[2] foldable carton from a one-piece paperboard blank with a "slot and tab means" between the top ("one panel") and a front panel ("second panel"). In layman's terms, Plaintiff's patent is for a tab and an opening which will hold sections of a cardboard carton together while it is being sealed. The sections are all on a single piece of cardboard with pre-set creases to facilitate folding. The "slot and tab means" holds the two panels rigid and in proper position to each other until an adhesive sets. *See* '705 Patent, *supra*, cols. 5–6. For a graphic illustration, see the drawing contained in the '705 patent document.* Claim 5, a dependent[3] claim, teaches a pair of slots and tabs as described in Claim 4. *See* '705 Patent, *supra*, at col. 6.

Plaintiff has also patented a machine which folds the above-described blank around the contents of the carton. *Id.* at col. 1; Plaintiff's Exhibit P–12A. A salesman of Defendant has testified that Defendant's accused carton is compatible with Plaintiff's machine of the above-described type. *See* Deposition of Morris Bernhardt at 12–13 [hereinafter cited as Bernhardt Deposition], accompanying Plaintiff's Statement of Material Facts as to Which There Exists a Genuine Issue and Plaintiff's Statement of Material Facts Not in Genuine Dispute Bearing on the Infringement Issue [hereinafter cited as Plaintiff's Statement]. Defendant does not dispute Plaintiff's documentary and deposition evidence that Defendant developed the product with Plaintiff's carton available as a model, in order to supply a then-existing customer of Plaintiff with a carton compatible with Plaintiff's assembly machine. *See* Bernhardt Deposition, *supra*, and Deposition of John J. Aust [hereinafter cited as Aust Deposition], accompanying Plaintiff's Statement, *supra*. There is no dispute that this design was formulated with full knowledge of Plaintiff's existing patent, and indeed, with a view to avoiding the scope of the patent in suit. Bernhardt Deposition, *supra*, at 5; Aust Deposition, *supra* at 9; Letter dated October 4, 1978, Plaintiff's Exhibit 11. Prior to production of the accused carton, Defendant's house counsel rendered an opinion that, taking into account the prosecution history of Plaintiff's patent, Defendant's product did not infringe Plaintiff's claims. *See* Letter dated October 4, 1978, *supra*.

Plaintiff's carton employs a slot of fixed dimensions which is wider than the tab it is designed to receive. *See* Plaintiff's Deposition Exhibits P–4 and P–13 (Physical Exhibits). Defendant's carton employs three U-shaped cuts, which, when the carton is folded, open to provide a space sufficient to receive the corresponding tab. *See* Plaintiff's Deposition Exhibits P–2 and P–14 (Physical Exhibits). For a graphic approxi-

---

**1.** The "claims" in an issued patent define the scope of the grant, though specifications and drawings contained in the patent document may be used for clarification purposes. 7 Deller's Walker on Patents, § 509 at 166 (2d ed. 1972).

**2.** A "wrap-around" carton is one formed from a blank which "wraps around" the contents when folded, and in which the contents are enclosed prior to folding. *See* Plaintiff's Statement of Material Facts as to Which There Ex-

ists a Genuine Issue and Plaintiff's Statement of Material Facts Not in Genuine Dispute Bearing on the Infringement Issue at 4–5.

* Appendix A

**3.** A dependent claim is one which refers back to and further restricts a single preceding claim. *See* 5 Deller's Walker on Patents, § 445 at 129 (2d ed. 1972).

mation of Defendant's device, see the drawing accompanying Letter dated October 4, 1978, *supra.* \*\*

Claims 4 and 5 in the '705 Patent read as follows:

4. In a foldable carton formed from a one-piece paperboard blank comprising at least one panel having a closure flap connected thereto along a hinge line, a second panel positioned for cooperation along a free edge thereof with said flap, an adhesive joint between said second panel and said flap with the first and second panels maintained one normal to the other; slot and tab means positioned between said panels for mating engagement one within the other rigidly supporting and maintaining said second panel normal to said one panel and inwardly of said closure flap while said adhesive joint is secured, said slot positioned along said hinge line and the transverse dimension of said slot being greater than the thickness of said tab such that the slot has a lead edge and an oppositely facing abutment edge when said first panel and said closure flap are lying in the same plane said edges lying on opposite sides of said hinge line, said tab being integral with said second panel and juxtaposed said abutment edge while said joint is being secured.

5. A carton as claimed in claim 4 in which said slot and tab means comprise a pair of slots and tabs for cooperation respectively one with another.

'705 Patent, *supra* at cols. 5–6. The contents, though not the meaning, of the '705 "file wrapper," or history of the prosecution

of the patent, are undisputed. *See* Defendant's Exhibit B.

In determining whether Plaintiff's claim has been infringed, the Court must decide (a) if the accused carton literally infringes Plaintiff's patent and (b) even if literal infringement has not occurred, whether under the doctrine of equivalents, it can fairly be said that Defendant's structure performs the same function in substantially the same way to achieve the same results. *See Ziegler v. Phillips Petroleum Co.*, 483 F.2d 858, 868 (5th Cir.), *cert. denied*, 414 U.S. 1079, 94 S.Ct. 597, 38 L.Ed.2d 485 (1973). Finally, the Court will address the question of whether summary judgment is appropriate in this case.

### (a) *Literal infringement*

 Although the Court finds that certain of the distinctions drawn by Defendant between its accused carton and Plaintiff's carton are either immaterial[4] or nonexistent[5], a visual comparison of the two cartons shows that Defendant's is not literally encompassed by the wording of the '705 patent. When the first panel and closure flap[6] of the accused structure are lying in the same plane, the U-shaped cuts are virtually closed up. It is only when the closure flap is folded perpendicular to the first panel along the crease in the cardboard or "hinge line" that a space adequate to accommodate a tab appears. Thus, when the first panel and closure flap are "lying in the same plane," the accused carton, unlike Plaintiff's, does not have a slot with a "transverse dimension . . . greater than the thickness of the tab." This same reasoning

---

\*\* Appendix B

**4.** Defendant itself has apparently conceded that no distinction can meaningfully be made on the ground that its opening is a "slit" and Plaintiff's is a "slot." *Compare* Memorandum in Support of Defendant's Motion for Summary Judgment of Non-Infringement at 11–12 *with* Defendant's Response to Plaintiff's Statement of Material Facts and Memorandum Opposing Defendant's Motion for Summary Judgment at 2.

**5.** Defendant contends, for example, that its "carton blank" is not a "foldable carton" and

that its carton does not have an "adhesive joint" because a different type of fastener may be employed on it. A casual visual examination of the two products will reveal that they are identical in these respects.

**6.** This is actually a part of the first or top panel. The closure flap is also called a "manufacturer's flap." It can be folded along a "hinge" or crease so as to be perpendicular to the first panel to which it is connected. It then lies parallel to, and its underside can be sealed to, the second panel.

would apply to dependent claim 5. A patentee's rights are circumscribed by his claim. *Rosen v. Kahlenberg*, 474 F.2d 858, 860 (5th Cir. 1973). An omission in the accused device of an ingredient or element contained in the patent claim avoids infringement. *Gaddis v. Calgon Corp.*, 506 F.2d 880, 886 (5th Cir. 1975). Literally read, Claims 4 and 5 do not reach the accused product.

### (b) *Infringement by operation of the doctrine of equivalents*

 Even though an accused device does not fall within the literal wording of the patent, it may yet constitute an infringement under the doctrine of equivalents by deviating from the patented claim in but a minor way while retaining a substantial identity of function, operation and result. *See Ziegler v. Phillips Petroleum Co.*, 483 F.2d 858, 868 (5th Cir.), *cert. denied*, 414 U.S. 1079, 94 S.Ct. 597, 38 L.Ed.2d 485 (1973). The range of equivalents in a patent claim, however, is limited by the scope of the invention. A pioneer invention is entitled to broader range of equivalents than is a secondary invention. *See* 7 Deller's Walker on Patents, § 553 at 347 (2d ed. 1972). In addition, under the doctrine of file wrapper estoppel, if the file wrapper reveals that the patentee has surrendered claims, or has amended, narrowed, or otherwise limited his claims in response to the objections of the Patent Office, he may not later recapture, through the doctrine of equivalents, what he has given up. *Ziegler v. Phillips Petroleum Co.*, 483 F.2d at 870. *See also, Graham v. John Deere Co.*, 383 U.S. 1, 33, 86 S.Ct. 684, 701, 15 L.Ed.2d 545 (1966).

Plaintiff contends that the '705 file wrapper does not operate in the instant case to estop Plaintiff from asserting the doctrine of equivalents. Plaintiff argues that file wrapper estoppel is inapplicable because amendments made to the claim during its prosecution were for the purpose of clarifi-

cation, and not for the purpose of avoiding prior art. *See* Plaintiff's Memorandum, *supra*, at 24. Defendant contends that the amendments were made to avoid rejection on the ground of anticipation by prior art and that in any event, file wrapper estoppel is not limited to amendments made to overcome objections based on prior art. *See* Defendant's Response to Plaintiff's Statement of Material Facts and Memorandum Opposing Defendant's Motion for Summary Judgment [hereinafter cited as Defendant's Response] at 8–9. The Court agrees with Defendant for the reasons explained below.

There is no contention that claims 4 and 5 represent anything but secondary inventions. *See* '705 Patent, *supra*, at col. 1; Plaintiff's Memorandum, *supra*, at 5. The patent states, however, that prior art did not teach how to maintain flaps and panels in the face-to-face juxtaposition required for an adhesive fastener to set. *See* '705, *supra*, at col. 1. If, in order to facilitate fastening, pressure is applied from outside the carton, this force would tend to push the panels apart and to prevent bonding. *Id.* The patent states that this factor is particularly important when high-speed folding machines are used. *Id.*

The slot and tab means—*i.e.*, the tab and the opening meant to contain it—which maintains the closure flap and second panel face-to-face until an adhesive can set, constitutes the novelty of the invention, according to Plaintiff. The scope of equivalents for such a secondary invention is much more limited than is that for a pioneer invention. *See Diamond Rubber Co. v. Consolidated Rubber Co.*, 220 U.S. 428, 440–41, 31 S.Ct. 444, 450–51, 55 L.Ed. 527 (1911); 7 Deller's Walker on Patents, *supra*, § 555 at 357. In addition, in the Court's view, the file wrapper of the patent severely limits the scope of the allegedly novel "slot and tab means."[7] Plaintiff and Defendant, however, differ in the interpretation to be given amendments made to Claim 4 during the prosecution history of the patent.

---

7. The novelty of this element is assumed, on this Motion for Summary Judgment, to be sufficient to justify patentability. *Cf. Central Soya*

*Co., Inc. v. Geo. A. Hormel & Co.*, 645 F.2d 847, 849–50 (10th Cir. 1981).

In the original patent application, Claim 4 reads as follows:

> 4. In a foldable carton formed from a one-piece paperboard blank comprising at least one panel having a hingedly connected flap and a second panel positioned for cooperation along a free edge thereof with said flap to form an adhesive joint between said panels; slot and tab means positioned between said panels for mating engagement one within the other to rigidly support and maintain said second panel in position relative to said one panel while said adhesive joint is secured.

Application dated October 22, 1970, in Defendant's Exhibit B [hereinafter cited as Original Application], at 15. Claim 4 was rejected in the U.S. Patent Action mailed December 7, 1971 [hereinafter cited as First Official Action], *see* Attachment to Order filed October 19, 1981, under 35 U.S.C. § 102, the statute which requires novelty as a condition for the issuance of a patent. Two grounds were given for this rejection. First, along with Claims 1–3, 5–7 and 9, Claim 4 was rejected as anticipated by the Clemens patent, U.S. Patent No. 1923065 (Aug. 23, 1933), Defendant's Exhibit C. Second, Claim 4 was rejected along with Claim 8 as anticipated by the Gross patent, U.S. Patent No. 2846930 (Aug. 12, 1958), Defendant's Exhibit D.

With regard to the first objection, the Patent Office, in the portion of its form entitled "Information: Identification and Comments," related the applicant's so-called "end closure flap" and "second panel" to certain numbered panels of the Clemens patent. The examiner added, "The functional statements are given no patentable weight." *See* First Official Action, *supra*, at 2.

As to the second ground, under the "Information: Identification and Comments"

section, the Patent Office related the applicant's so-called "one panel" and "second panel" to certain numbered panels of the Gross patent. In the first amendment to the patent application, "Amendment A," [8] *see* Defendant's Exhibit B, Claims 7, 8, 13 and 14 were cancelled. Claim 4 was rewritten as follows:

> 4. (amended) In a foldable carton formed from a one-piece paperboard blank comprising at least one panel having a hingedly connected flap and a second panel positioned for cooperation along a free edge thereof with said flap to form an adhesive joint between said panels *with the first and second panels maintained one normal to the other*; slot and tab means positioned between said panels for mating engagement one within the other rigidly support and maintain said second panel *normal* [in position relative] to said one panel while said adhesive joint is secured, *the transverse dimension of said slot means being greater than the thickness of said tab such that the slot has a lead edge and an oppositely facing abutment edge, said tab being integral with said second panel and juxtaposed said abutment edge while said joint is being secured.*

In its remarks accompanying Amendment A, applicants explain in the first paragraph that Claim 1 was amended "to remove the formal objections thereto under Section 112 [9] and to *distinguish the invention over the art of record.*" (emphasis added). After explaining a change in phraseology, applicants stated, "It is now believed that [Claim 1] is now *in proper form* to meet the requirements of Section 112." (emphasis added). The second paragraph reads:

> Claim 4 has been amended in the same manner as claim 1 to limit these claims such that the first and second panels are maintained normal to each other when

---

**8.** This amendment is dated on the upper right of the first page as April 3, 1972; it is marked on the upper right of the first page April 12, 1972; it is subsequently referred to in Patent Office documents as the April 5, 1972 Amendment. Defendant refers to it as the April 3, 1972 Amendment and as the April 12, 1973 Amendment. Plaintiff refers to it as the April

5, 1972 Amendment. The Court refers to it as Amendment A.

**9.** A ground of rejection of Claim 1 separate from the ground on which it was rejected along with Claim 4. Section 112 requires specificity in claiming the subject matter of the patent.

the carton is assembled, and to more clearly define the dimensional relationship between the slot and tab. *These two independent claims have been rejected over the Clemens patent.*

The Examiner analogizes Clemens' panel 12 to applicants' flap 24. It is submitted that the analogy is not correct. Clemens teaches a container having locking tabs 34, 35, and slots 16, 17, the tabs being on a flap 33 carried by top 32 and adapted to be positioned within the slots 16 and 17 in the bottom wall 11 to lock these walls together when the container is assembled. This is to be contrasted with applicants' claimed device wherein the slot 48 is positioned between the end closure flap 24 and the first top panel 22 such that the front panel (defined as the second panel) will be maintained normal to the top or first panel 22 during assembly of the container. The tab is integral with the second panel. Applicants' tab and slot do not serve a locking function, but rather function as an assembly expedient as claimed to keep the front and top panels squared-off during setting of the adhesive bond. This assembly function could not be achieved if the slots were positioned in a bottom wall 11 as taught by Clemens.

Amended claims 1 and 4 specifically define the relationship between the slot and tab; *the slot is wider than the tab to provide an abutment edge against which the tab is juxtaposed during formation of the container.* This feature is important for maintaining the first and second panels normal one relative to the other during assembly of the container. The Clemens patent discloses no such interrelationship between his tabs 34, 35 and slots 16, 17 because an assembly expedient is not contemplated.

Amendment A, *supra*, at 4–5. (emphasis added).

The Clemens patent in part discloses an invention for a foldable carton that will remain closed without sealing or fastening, so that its contents can be removed for inspection without any indication in the packaging that such removal has occurred.

The Clemens tabs are curved so that the distance between their furthest edges is wider than the space between the furthest edges of the corresponding slots. It is thus necessary to distort the panel from which the tabs protrude to allow their insertion into the slots. Clemens' patent, *supra*, at 2. Since the flap tends to return to its natural shape, this design serves a locking function. *Id.*

Amendment A also distinguishes the Gross patent from Claim 4 on the ground that Gross involved a locking function. The Gross patent in part teaches the construction of a foldable tray using a combination of interlocking parts and adhesive. The patent recites that both these methods were previously used separately, but never together. It states as background:

The so-called glued cartons or trays, that is the type in which the flaps are glued in place have certain advantages in cheapness because of the simplicity of the blank used and in the rigidity of the tray. These advantages have been offset, however, by the fact that more time is required in setting up and gluing the blanks in tray form as compared with the interlocked type. In the interlocked type high speed machine operation is possible but the cutting of the blank, with respect to the shape and position of the interlocking portions, is critical and the completed tray lacks rigidity at the corners.

One object of the present invention is the provision of a glued tray construction which has the advantages of blank simplicity and corner rigidity but which can be set up and glued on high speed machines.

Gross patent, *supra*, at col. 1. It teaches the extension of a "bluntly pointed" tab off an end panel, to be folded over the adjacent end of a side panel, by insertion into a cut formed when the sidewall is pressed out slightly. *See* Gross patent, *supra*, at cols. 1–2. The tab and cut arrangement provides continuing pressure which allows adhesive placed between the cut and the end of the side panel to set. *Id.* at col. 2. The

patent states that the length of the cuts are such that the blunt end portions of the tab are freely engageable, "making a spatulate engagement in the slits as distinguished from the barbed engagement of the locking tongues of the locked type of tray." *Id.* at col. 2. In its "Remarks" in Amendment A, Plaintiff added that since Claim 8 (which appended to Claim 4 a provision for an adhesive bond) had been withdrawn, it was believed that the Patent Office rejections in paragraphs 4 and 7 of the First Official Action, *supra*, were no longer pertinent. *See* Amendment A, *supra*, at 5.

Plaintiff's Memorandum, *supra*, at 8, contends that Claim 4 was first rejected for failing to meet both Section 102 and Section 112. Drawing on the Patent Office's comment in the "Information: Identification and Comments" Section of the First Official Action, Plaintiff attempts to characterize this first rejection of Claim 4 as a result of "functional statements" in the initial application. Plaintiff then argues that amendments made in response to this objection cannot estop Plaintiff from claiming equivalence because the file wrapper estoppel doctrine applies primarily to rejections based on prior art. The Court disagrees with Plaintiff's characterization of this first amendment to Claim 4. It also is less than clear that Plaintiff's position correctly represents the legal doctrine of file wrapper estoppel as enunciated by this Circuit.

Plaintiff's attempt to attribute the rejection of Claim 4 to "functional statements" runs counter to the format of the First Official Action. Where the Patent Office rejected a claim under the statute which provides for rejection on the ground of, *inter alia*, "functional statements" (*i.e.*, Section 112), it explicitly cited to that statute. Plaintiff's own proffered documentation elaborating on the meaning of "functional statements" is an annotation of this same statutory section. *See* Manual of Patent Examining Procedure at 133, accompanying Plaintiff's Memorandum, *supra*. Paragraph 3 of the First Official Action lists section 102, which requires novelty, under the "Reasons for Rejection" column next to Claim 4 and the other claims noted in that paragraph. *See* First Official Action, *supra*, at 2. It would seem logical that if the Patent Office meant to reject Claim 4 on the ground of functional statements, it would have included Claim 4 either in paragraph 1, where it rejected Claim 1 under Section 112, or have set forth this ground in a separate paragraph. Where the Patent Office intended to reject a claim under the "functional statement" statutory section, it knew how to so specify.

Concentrating only on the "Information: Identification and Comments" column in paragraph 3 of the First Initial Action, Plaintiff argues that only the first three sentences relate to prior art. Plaintiff contends that the last sentence, "Functional statements are given no patentable weight" is not a rejection based on prior art, but merely seeks greater specification of the novel part of the invention, "the slot and tab means." *See* Plaintiff's Memorandum, *supra*, at 9.

The Court believes that Plaintiff's interpretation distorts the meaning of the Patent Office comment and of the subsequent amendments to Claim 4. While the Patent Office's comment "functional statements are given no patentable weight" did hold out to Plaintiff the possibility that greater specification of the "slot and tab means" could serve to distinguish its claim from prior art, it also indicates, within the context of section 102 rejection that unless further definition of this element were made, the claim would not possess sufficient novelty to render it patentable. That the comment merely held out the hope that further definition would yield patentable material is substantiated by subsequent official action, in which Claim 4 was again rejected, this time as obvious in light of prior art. *See* Official Action mailed August 2, 1972 [hereinafter cited as Second Official Action], attached to Order of October 16, 1981.

Plaintiff's subsequent Amendment A, its "Remarks," therein, and prior art also support this interpretation. Plaintiff's own linkage of the rephrasing of "slot and tab

means" to distinguishing this feature from Clemens in the section of its "Remarks" cited *supra*, shows that Plaintiff understood that this element, however described, still had to be differentiated from prior art. Even if Plaintiff did not expressly concede that in its unamended form Claim 4 was encompassed by prior art, its narrowing of the claim in light of prior art is sufficient now to estop Plaintiff from broadening its claim into areas previously impliedly disclaimed.

Moreover, even if, contrary to the facts and to context, Amendment A changes were only definitional and were only made to overcome rejection on the ground of functional statements, given the magnitude of these changes relative to the overall scope of the secondary invention at issue in this case, this would suffice under the precedent of this Circuit to estop Plaintiff from claiming broader coverage. "[T]he doctrine of file wrapper estoppel applies to all patent office surrenders, not merely to those which are based on prior art." *Laitram Corp. v. Deep South Packing Co., Inc.*, 443 F.2d 928, 934 (5th Cir. 1971). The *Ziegler* case does not so restrict the doctrine, as Plaintiff argues, but rather cites prior art as one possible ground for operation of the doctrine of file wrapper estoppel. 483 F.2d at 877. *Ziegler* holds that a mere change in wording cannot effect an estoppel. Given the limited scope of the instant patent, the changes at issue in the instant case are not purely formal or merely technical.

The Second Official Action of the Patent Office rejected all of Plaintiff's resubmitted claims. The following language was used in rejecting amended Claim 4:

Claims 1 and 4 are rejected under 35 U.S.C. 103 as unpatentable over Buttery in view of Diez. It is obvious to one of ordinary skill in the art to adhesively secure front panel 2 to end closure flap 12 of Buttery as taught by Diez (col. 2, lines 48–58). It is apparent from Fig. 4 of Buttery that once panel 12 is folded, slot 15 has a transverse dimension that is greater than the thickness of tab 21.

Second Official Action, *supra* at ¶ 13. The statute cited, 35 U.S.C. § 103, provides that for a patent to be obtained, the difference between an invention sought to be patented and prior art must be such that the subject matter of the invention would not be obvious to persons with ordinary skill in the art. Paragraph 19 of the Second Official Action states that "[t]he citation of new references has been necessitated by applicant's response to the prior office action."

The Buttery patent, U.S. Patent No. 2,675,160 (Apr. 13, 1954), Defendant's Exhibit E, provides for certain improvements in knock-down covered cartons. In part, it discloses a method of constructing a locking tab and slot without adhesive. The Buttery slot is positioned on the fold-down flap of a top panel, slightly offset from the crease or fold line between the top panel and flap so that it lies entirely in the flap. It is formed by U-shaped cuts which expand on folding. *See* Buttery, *supra*, at cols. 1–2. The tab is notched. *Id.* at col. 2. The patent recites that the edge of the tab engages the overhang formed by the off-set position of the slot and is effectively guided into closed position. The notch on the tab allows it to lock into place. *See* Buttery, *supra*, at cols. 2–4.

The Diez patent, U.S. Patent No. 3,148,-823 (Sept. 15, 1964), Defendant's Exhibit F, teaches in part a reclosable container with an "overwrap" panel that folds under the tray portion of the carton and up again to form a cover with the tab. There is a slit in the overwrap portion of the panel into which the tab locks. *See* Diez, *supra*, at col. 2. Diez also discloses,—and this is noted in the Second Official Action—that local seals can also be utilized to further secure the locking tabs. *See* Diez, *supra*, at col. 2, 1.47–48, and Second Official Action, *supra*, at ¶ 13. Diez, however, being directed to containers reclosable after their contents are partially depleted, discussed a seal rupturable by slight force. *See* Diez, *supra*, at col. 2, 1.47–48.

In its next amendment [hereinafter cited as Amendment B], dated October 20, 1972, in Defendant's Exhibit B, which made sub-

stantive changes in three claims, Claim 4 was restated as follows:

4. (twice amended) In a foldable carton formed from a one-piece paperboard blank comprising at least one panel having a [hingedly] *closure flap* connected [flap and] *thereto along a hinge line*, a second panel positioned for cooperation along a free edge thereof with said flap, [to form] an adhesive joint between said *second* panel[s] *and said flap* with the first and second panels maintained one normal to the other; slot and tab means positioned between said panels for mating engagement one within the other [to] rigidly support*ing* and maintain*ing* said second panel normal to said one panel *and inwardly of said closure flap* while said adhesive joint is secured, *said slot positioned along said hinge line and* the transverse dimension of said slot [means] being greater than the thickness of said tab such that the slot has a lead edge and an oppositely facing abutment edge *when said first panel and said closure flap are lying in the same plane, said edges lying on opposite sides of said hinge line*, said tab being integral with said second panel and juxtaposed said abutment edge while said joint is being secured.

Amendment B, *supra*, at 3. In its accompanying "Remarks," applicants referred to a recent interview at which the Buttery, Clemens and Diez patents were discussed. Applicants stated that this prior art, which served a locking function, was distinguishable both structurally and functionally, "particularly in view of the amendments to the claims as presented herein." *Id.* at 4–5. Applicants explained that their design was intended to prevent the front panel from bending in when pressure was applied to set the adhesive. Applicants stated that "[b]ecause of the claimed arrangement of the tongue and slot which define the physical relationship of these elements, it will be clear that though the tongue and slot interengage one another in the assembled carton, they do not serve the purpose of locking the carton in the assembled relationship." *Id.* at 5. (emphasis added). Applicants noted that deformation of the tab was

not necessary since locking was not accomplished. They then stated that "[a]pplicants have amended claims 1, 4 and 10 to define the specific relationship and position of the tongues and slots to the other component parts of the erected carton." *Id.* at 6.

Applicants' own explanation of the changes, therefore, is that they serve to differentiate the patent in suit from prior art. Plaintiff's argument that it never was conceded that the basic thrust of the invention, the "slot and tab means," in unamended form, was encompassed by prior art when such changes were made is without foundation. Plaintiff admits that the Second Official Action rejected Claim 4 as unpatentable over Buttery in view of Diez, and cited Section 103, which concerns nonobviousness. Plaintiff then denies that a subsequent amendment was made to avoid prior art because neither Buttery nor Diez was concerned with the problem of adhesive joints. Not only is this assertion disputable with regard to Diez, *see* discussion *supra*, but Amendment B is expressly concerned with distinguishing prior art. The applicants' subjective motivations in making these distinctions and accompanying amendments in response to Patent Office action are immaterial. "File wrapper estoppel arises only through amendment and cancellation of claims to overcome rejection, and the court will look no further than to learn whether the patentee seeking to disavow an element of his claim was forced to introduce such element to avoid rejection." *Taylor-Reed Corp. v. Mennen Food Products, Inc.*, 324 F.2d 108–113 (7th Cir. 1963).

Obviously, lack of novelty in the invention was not conceded—how else could it be contended that a patent should issue? The Patent Office ultimately found that Claim 4 had novelty—it issued the patent and the validity of that patent is assumed for the purpose of this motion. The question is whether, in light of prior patents, the basic thrust of the invention was so narrowed that Defendant's very similar carton does not infringe Plaintiff's patent as a matter of law. Whatever tenuous arguments Plaintiff may be able to make re-

garding the purpose of Amendment A, there is nothing in the subsequent official documents or in Plaintiff's own responses thereto to indicate that the still later changes in Claim 4 were made for any reason other than that of avoiding prior art. The Court is unable to fathom Plaintiff's attempt to distinguish between the differentiation of prior claims accomplished through clarification of the patent at issue, thereby narrowing the patent in suit, and the admission that such prior claims covered the patent at issue in its broader unamended form. Plaintiff does not deny that the Amendment B changes were prompted by objections based on prior art. Plaintiff's Memo at 12–13. Plaintiff has offered no evidence to contradict the interpretation compelled by the documents, that the addition of the specification that the slot retain a dimension while the hinge panel and top panel were in the same plane, was necessitated by prior art. The opening in Defendant's accused structure simply does not exist when the hinge and top panels are in the same plane. The party opposing a motion for summary judgment cannot rely on mere allegations in its brief to fend off the motion. See Wright, C. & Miller, A., supra, § 2712 at 384. Even if, contrary to the weight of the evidence, Amendment A changes were not made to overcome prior art, Amendment B changes, containing the critical language that the slot retain a dimension when the hinge panel and top panel are in the same plane, were indisputably necessitated by the existence of prior art.

▮ Based on the above-considered documents, and the lack of any controverting evidence being introduced by Plaintiff,[10] the Court finds that file wrapper estoppel was created with respect to certain elements of Claims 4 and 5. The element with particular relevance to the accused structure is the specification that the slot be wider than the tab when the flap and top panel are lying in the same plane.[11] The Court finds that this element serves to distinguish the patent in suit from Buttery, supra, in view of Diez, supra, the former involving an opening which expanded when a panel was bent. In view of this, it is not possible to construe the patent in suit's specification of an opening of a given dimension when a given configuration (viz., when two panels are in the same plane) is present, to mean any opening, i.e., anything not necessitating cutting to form it. Defendant's slot is actually formed when the flap is folded perpendicular to the top panel, a concept taught by Buttery, supra. Although Plaintiff and Defendant's carton both use "slots and tabs" to achieve the same result, that of rigidifying a carton

---

10. The only additional evidence introduced by Plaintiff in response to Defendant's Motion for Summary Judgment tended to substantiate the allegation that Defendant deliberately set about to copy Plaintiff's carton so that its imitation could be put through the assembly machine furnished one of Plaintiff's former customers. See Depositions of Bernhardt, supra, and of Aust, supra. Plaintiff's evidence also contains a letter from Defendant's counsel, which if construed in a light most favorable to Plaintiff as required in a motion for summary judgment, indicates that Defendant's product was consciously designed to avoid technical infringement of Plaintiff's patent. Given the extent of prior art and of the amendments made during the prosecution of the patent, the Court finds that assuming Plaintiff's patent is valid, its scope is so severely constricted that even such technical changes suffice to draw an invention out of its range.

11. Plaintiff argues that Defendant's slot/tab mechanism infringes Plaintiff's patent even though the accused device is comparatively much narrower because the important element is only that the transverse dimension of the slot be greater than the thickness of the tab, not the amount by which it is greater. Plaintiff's Memorandum, supra, at 7. Plaintiff quotes the patent out of context, however. Plaintiff fails to add that the patent specifies the slot have a lead edge and an abutment edge when the flap and top panel "are lying in the same plane." Thus, even if the specific incremental thickness of the slot were not relevant, the fact that it retains some dimension regardless of whether or not the top panel is folded is. See '705 Patent, supra, at col. 6. Plaintiff argues that this amendment was for the purpose of clarifying that no additional cutting or severing was needed for the slot. See Plaintiff's Memorandum, supra, at 14. There is nothing in any of the prosecution history or prior art to suggest this rationale and Plaintiff offers no evidence in support of its otherwise incredible contention.

during setting of adhesive, the Court is unable to conclude that the "slot and tab means" employed by each are the same. Where a patent is so dependent on a limiting feature to distinguish it from prior art, the doctrine of equivalents cannot serve to expand its claim to cover a device lacking that essential feature. *See* 7 Deller's Walker on Patents, *supra*, § 558 at 364. The Court finds that Defendant is entitled to summary judgment on the basis of noninfringement.

(c) *The propriety of summary judgment in this case*

Plaintiff argues that this case is not an appropriate one for summary judgment. The cases cited by Plaintiff are not on point here. In *Fujitsu Ltd. v. Sprague Electric Co.*, 264 F.Supp. 930, 936–37 (S.D. N.Y.1975), the Court, in denying summary judgment, expressly noted that it lacked the technical expertise to rule without the benefit of trial. Plaintiff itself has stated that it "agrees that patent '705 does not require a technical expert to explain the thrust of the invention thereof." *See* Plaintiff's Memorandum, *supra*, at 4. The *Fujitsu* case itself took into account existing precedent that, under proper circumstances, summary judgment may be granted in a patent case. 264 F.Supp. at 933. The question of interpretation of a patent is one for the judge, not the trier of fact. 4 Deller's Walker on Patents, *supra*, § 230 at 79–80.

*Graver Tank and Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 609–610, 70 S.Ct. 854, 856–57, 94 L.Ed. 1097 (1950), also cited by Plaintiff, held that equivalence was a question of fact for the purposes of appellate review. It did not concern the propriety of summary judgment. *AMP Inc. v. Bunker Ramo Corp.*, 197 U.S.P.Q. 200 (D.C.Ill.1977), also cited by Plaintiff, was vacated on May 18, 1978. Plaintiff's suggestion that the potential collateral estoppel effects of this decision should militate against the award of summary judgment are without merit. Both *Blonder Tongue Laboratories v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) and *Jamesbury*

*Corp. v. Litton Industrial Products, Inc.*, 586 F.2d 917, 921 n.9 (2d Cir. 1978) (dicta), *cert. denied*, 440 U.S. 961, 99 S.Ct. 1503, 59 L.Ed.2d 774 (1979) involved the defensive use of the collateral estoppel effect of a prior determination of *invalidity* of a patent against the same plaintiff by a different defendant. The determination of non-infringement by Defendant in this case will not invalidate Plaintiff's patent. Neither will it preclude suits against different potential infringers, since such actions would involve different claims which Plaintiff has not had a full and fair opportunity to litigate.

The only additional evidence introduced by Plaintiff in response to Defendant's motion tends to show that Defendant consciously fashioned its carton so as to make it compatible with Plaintiff's machine, while at the same time technically avoiding infringement. The fact remains, however, that Defendant's device lies outside the narrow scope of Plaintiff's secondary invention and within the crowded realm of prior art. Even if Defendant's conscious side-stepping of Plaintiff's device would justify taking a sterner view of the difference in Defendant's product, the Court is unable to conclude, in light of the prosecution history of the patent, that Plaintiff's limited invention can be stretched to encompass the accused carton.

For the above reasons, the Court GRANTS summary judgment for Defendant, on the ground that Plaintiff's patent was not infringed as a matter of law. The parties are DIRECTED to confer, and within 15 days from the date of entry of this Order, to file a joint statement of the issues remaining for trial in this case.

In summary, Defendant's Motion to Amend the Order of June 23, 1981 is DENIED; Plaintiff's request for attorney's fees and expenses in connection with its motion to compel answers to Interrogatories Nos. 54, 58, 59 and 64 is DENIED; Defendant's Motion to Compel Answers to Questions in Oral Examination is DENIED; Defendant's Motion for Summary Judgment on the ground of non-infringement is GRANTED.

APPENDIX A

APPENDIX B

Extension

3/16" TAPER — 3 — Extension

Terminating Panel

side panel Second Panel side panel

Support flap Intermediate Panel support flap

First Panel

—3⅞— 3/16

Flap

Fold line Slot along fold line

WEST KEY NUMBER SYSTEM